**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

*Filed Electronically*

| | | |
|---|---|---|
| KEVIN M. EAGEN II, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.5:25-cv-00300 |
| v. | ) | |
| | ) | |
| CORE SPECIALTY INSURANCE | ) | |
| HOLDINGS, INC.; CORE SPECIALTY | ) | |
| INSURANCE SERVICES, INC.; WILLIAM | ) | |
| VENS; JOSEPH E. CONSOLINO; and DON | ) | |
| LARSON, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

---

Defendants Core Specialty Insurance Holdings, Inc. and Core Specialty Insurance Services, Inc. (collectively, "Core" or the "Company"), along with William Vens ("Vens"), Joseph E. Consolino ("Consolino"), and Don Larson ("Larson") submit this memorandum of law in support of its motion to dismiss the Complaint filed by Plaintiff Kevin M. Eagen II ("Plaintiff" or "Eagen") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

This case centers on a single brief meeting between a disgruntled, ***current*** employee, Eagen II, and his former colleague, Vens. The Complaint alleges[1] that following a meeting during which

---

[1]     The allegations set out in the Complaint are taken as true for the purposes of this motion to dismiss only. *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382-83 (6th Cir. 2016).

Plaintiff raised concerns about Vens's work product, Vens called Plaintiff into his office and became visibly irritated. Plaintiff reported the alleged interaction with Vens to management, though he notably never mentioned sexual harassment or any other type of discrimination. Management did not act to Plaintiff's liking. Even though Plaintiff was never disciplined for his report, and he remains employed at the Company, Plaintiff brought this action, asserting claims for sexual harassment and retaliation along with an assortment of related common law claims.

The Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. Ann §§ 344.010 et seq., under which Plaintiff is presumably suing[2], is "not meant to police general workplace civility. The law is meant to stamp out discrimination and harassment." *Carter v. Toyota Motor Mfg., Ky., Inc.*, 2017 WL 2111642, at *17 (E.D. Ky. May 15, 2017). The factual allegations set forth in the Complaint, even if true, allege nothing more than workplace frustration. They are plainly insufficient to sustain the panoply of claims Plaintiff asserts, and in some instances even undermine his own legal theories.

First, Plaintiff's harassment claim centers almost exclusively on the single brief meeting with Vens. It is well-established, however, that a single interaction, like the one plead in the Complaint involving Vens, does not establish the severe and pervasive environment needed to sustain a harassment claim. Moreover, Plaintiff does not plead any facts tying Vens's conduct to his protected status (sexual orientation). Plaintiff's own Complaint concedes as much, alleging that his altercation with Vens was prompted by his comments during a management meeting, not because of his sexual orientation. ECF No. 1-2, Compl. ¶ 15. In addition, Plaintiff identifies no

---

[2]    Plaintiff fails to specifically identify a single statute under state or federal law and is vague, at best, on the basis for any of his claims.

change to the terms or conditions of his employment because of any purported harassment. All told, Plaintiff's allegations amount to a difference in opinion regarding a small number of discrete interactions over the course of four years, not a hostile work environment Plaintiff was subjected to because of his sexual orientation.

Plaintiff's retaliation claim fares no better. To sustain his retaliation claim, Plaintiff must allege he was engaged in protected activity, which requires opposition to unlawful discrimination. Complaining that a colleague was intimidating or created poor work product does not satisfy this element. Plaintiff's own allegations show that he did not connect his internal complaint to the Company about Vens to his own sexual orientation. He also must allege some adverse employment action. A suggested (not mandated) paid leave and meetings held about his department without him are insufficient to establish a materially adverse employment action. Without protected activity or any adverse job consequence, let alone a connection between the two, there is no claim for retaliation.

Plaintiff's common law claims similarly fall short. His vague "wrongful employment practices" claim, at most, amounts to a claim that Core breached the policies in its employee handbook. However, the handbook he invokes says—in plain English on every page—that it is informational, not a contract. That is fatal: under Kentucky law, a clear disclaimer defeats any implied contract claim. The intentional infliction of emotional distress ("IIED") count is also insufficient as a matter of law. Kentucky courts find such claims subsumed by the KCRA when, as here, it rests on the same alleged workplace conduct. Even if not subsumed, the claim still fails because the Complaint does not allege any outrageous conduct by Defendants or emotional harm to Plaintiff. As for Plaintiff's "negligent retention" claim, Kentucky recognizes that tort for third

3

parties injured by an employee—not for employees suing their own employer over co-worker conduct. As such, Plaintiff's common law claims must be dismissed.

On the pleadings, therefore, each claim fails as a matter of law. The Court should dismiss the Complaint in full.

## FACTUAL BACKGROUND

In August 2021, Plaintiff was hired to launch a new Equine Division. Compl. ¶ 9. As Equine Division President, Plaintiff was responsible for leading the division's "business operations, P/L, underwriting and claims handing [*sic*] teams, succession planning and talent assessment, annual financial planning, pricing, reinsurance, [and] marketing." *Id.* ¶ 10. According to the Complaint, Eagen "always received perfect or near perfect reviews" and his "department has consistently performed well, exceeding expectations in three of the four recent years." *Id.* ¶ 11.

Almost four years later, Plaintiff and another employee, the then-Executive Vice President and Chief Financial Officer, William Vens, were involved in a brief meeting. *Id.* ¶ 13. During this meeting on February 13, 2025, Plaintiff allegedly "brought out discrepancies in the 2024 Y/E financial reporting concerning his equine insurance division'[s] performance." *Id.* ¶ 14. Those comments, according to Plaintiff, "contradicted and reflected poorly on the work of Vens and his department." *Id.* Following the meeting, Vens "gestured to Eagen and told him to come into Vens's office." *Id.* ¶ 15. The Complaint alleges that "Vens was noticeably enraged" and "[h]is face was red and one hand, trembling, was crushing a soda can." *Id.* ¶ 15. Vens "questioned Eagen as to why he had not first discussed the reporting issue in private and accused Eagen of attacking Ven's [*sic*] team in public. Vens then accused Eagen of not knowing what he was talking about as to the company financials." *Id.* ¶ 16. Things allegedly escalated as the meeting went on—Vens "leaned on his desk" on which allegedly rested a baseball bat and he allegedly told Plaintiff that "[i]t's

4

going to be very hard for me to like you any longer, especially when I'm reviewing your incurred results, five years, or any results going forward." *Id.* ¶¶ 17-18. Plaintiff "interpreted Vens's remarks and demeanor to mean that Vens would harm Eagen professionally, personally, and financially." *Id.* ¶ 19.

Following the brief meeting, Plaintiff immediately reported it up the chain: to the Deputy General Counsel, the Chief Operating Officer, and the Vice President for Human Resources. *Id.* ¶ 20. The next day, on February 14, Plaintiff wrote an email to the CEO, Consolino, about the brief meeting, and in that email he "again defended the performance of his department and stated that he felt Vens would retaliate against Eagen's department in future accounting evaluations." *Id.* ¶ 21. Plaintiff felt "he could not work in the same location as Vens because of Vens's threatening, intimidating and harassing behavior." *Id.* ¶ 23.

On February 27, Consolino allegedly told Eagen "that no disciplinary action and/or dismissal would be taken against Vens and no investigation was done." *Id.* ¶ 25. Plaintiff surmised, through conversations with others, that no action would be taken because Vens was an investor in the parent company and "Core did not want the brief meeting to become public knowledge while Core is in the process of an Initial Public Offering ('IPO')." *Id.* Vens's allegedly problematic conduct was said to be known to the Company and Plaintiff claims other employees also reported that they found Vens to be threatening or intimidating. *Id.* ¶¶ 36-43.

Later, when Plaintiff raised the issue again with Don Larson, the Vice Chair of the Board, and General Counsel Robert Kuzloski, they "requested that Eagen delay taking any further steps regarding Vens until after the initial public offering occurs." *Id.* ¶ 28. Specifically, Larson "suggested that Eagen take a paid six week sabbatical until after the upcoming May 28, 2025 Board

meeting." *Id.* ¶ 29. At that meeting, according to Kuzloski and Larson, a discussion of an amicable separation between the Company and Eagen would occur. *Id.* ¶ 30.

Subsequently, "Core personnel, including Consolino, held meetings relating to the Equine department headed by Eagen, but without asking Eagen or any other member of the department to attend or have any input." *Id.* ¶ 31. Plaintiff then alleges,"[a]s a direct and proximate result of having complained to Core executives about the conduct of Vens, Core has ostracized and minimalized Eagen, thereby undercutting his authority and reputation in the company, the end result of which will be to substantially interfere with the employment of Eagen by Core or lead to his dismissal." *Id.* ¶ 33.

By June 2025, "Core announced internally that Vens had 'left the company to pursue opportunities outside of the company.'" *Id.* ¶ 34. Plaintiff claims "Core did not terminate Vens for cause, or terminate Vens as a consequence of Vens's actions toward Eagen" and "Core did not punish or reprimand Vens, and instead punished and ostracized Eagen for bringing Vens's conduct to light." *Id.* ¶ 35.

According to the Complaint, "Vens was not alone in engaging in inappropriate, harassing conduct". Consolino, Plaintiff alleges, "also fostered a hostile work environment with regard to Eagen." *Id.* ¶ 44. He alleges three events occurred over a three-year period. In January 2025, Consolino "asked to try on a blazer Eagen was wearing to see if it fit him, stating Eagen was 'so lean.'" *Id.* A month later, Consolino walked up to Eagen in an office, squeezed his bicep, and "whispered in Eagen's ear that he wished he had dressed better because Eagen 'always looks so good.'" *Id.* ¶ 45. Almost *three years* earlier, Consolino "stripped down to his underwear to change clothes in Eagen's office with Eagen in the room." *Id.* ¶ 46.

On July 28, 2025, Plaintiff initiated this action, asserting claims for sexual harassment and discrimination, retaliation, "wrongful employment practices," intentional infliction of emotional distress, and negligent retention in Fayette Circuit Court. Defendants removed this case to this Court on August 27, 2025, ECF No. 1 (Notice of Removal), based on this Court's diversity jurisdiction. Defendants now move to dismiss Plaintiff's Complaint.

## ARGUMENT

### I.  LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Ultimately, the Court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "While the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions [or] a formulaic recitation of a cause of action's elements . . . ." *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

### II.  PLAINTIFF'S "SEXUAL HARASSMENT AND DISCRIMINATION" CLAIM (COUNT I) SHOULD BE DISMISSED.

Hardly a model of clarity, Plaintiff's Complaint asserts a sexual harassment claim without specifying the statutory basis for his claim. Compl. ¶¶ 55-61. Because Plaintiff did not allege that he exhausted the administrative remedies as required under Title VII of the Civil Rights Act of

1964, his only potential path forward is under the KCRA.[3] Even so, his Complaint fails to state a plausible claim under the KCRA.

Courts routinely apply the federal Title VII standard to evaluate KCRA discrimination claims. *See Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 877 (W.D. Ky. 2002) (collecting cases). A *prima facie* case for hostile work environment discrimination claims requires a plaintiff to allege facts plausible to show

> (1) [he] belonged to a protected class, (2) [he] was subject to unwelcome harassment, (3) the harassment was based on [the employee's protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the [employer] knew or should have known about the harassment and failed to act.

*Woods v. FacilitySource, LLC*, 640 F. App'x 478, 490 (6th Cir. 2016) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508, 511 (6th Cir. 2011)) (cleaned up). The Complaint does not allege any facts sufficient to demonstrate that three of the five *prima facie* elements are plausibly met.[4]

---

[3]    To the extent Plaintiff attempts to recast his claim as a Title VII claim, such claim should be dismissed for failure to exhaust the EEOC's administrative remedies. *See, e.g.*, *Perrin v. Vuliai*, 2016 WL 795900, at *2 (E.D. Mich. Feb. 29, 2016) (granting motion to dismiss on Title VII claim where plaintiff "does not allege that she filed a discrimination charge with the EEOC prior to filing her Complaint with [the] Court").  Moreover, the Kentucky Civil Rights Act's discrimination provisions "track [ ] federal law and should be interpreted consonant with federal interpretation." *Gragg v. Somerset Technical College*, 373 F.3d 763 (6th Cir.2004) (citing *Meyers v. Chapman Printing Co.*, 40 S.W.2d 814 (Ky.1992)). Accordingly, any claim by Plaintiff under federal law would be subject to dismissal for the same reasons stated herein.

[4]    While plaintiffs are not technically required to "'plead a *prima facie* case' in order to survive dismissal, *Twombly* and *Iqbal* require . . . at least 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that [the] work environment was both *objectively* and *subjectively* hostile due to sexually or racially-charged harassment." *Keys v. Humana, Inc.*, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013) (citations omitted).

It alleges only isolated incidents—nowhere near the threshold required to rise to the level of actionable harassment. It pleads no facts tying any conduct to his protected status (sexual orientation) nor does it identify a change to any term or condition of employment. Simply put, Plaintiff's allegations do not suffice to allege a plausible claim for actionable sexual harassment, and so the Court should dismiss the claim.

First, Plaintiff's sexual harassment claim is grounded in one isolated incident between Plaintiff and Vens. The overwhelming weight of authority confirms that this single incident is insufficient to clear the "severe or pervasive" bar to be actionable harassment under the second element of a *prima facie* case. Whether the harassment is severe and pervasive is determined by a totality of the circumstances test—circumstances including frequency and severity of the conduct, whether the conduct is "physically threatening or humiliating, . . . and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Except in cases of extreme incidents—such as rape or sexual assault—one-time offensive utterances or isolated actions are not sufficient to establish severe and pervasive harassment. *See Fedder v. CEMS of Ohio, Inc.*, 2024 WL 5319224, at *5 (6th Cir. Nov. 6, 2024) (per curiam) (explaining a single incident in which supervisor "discouraged [plaintiff] from applying for extra shifts at [a worksite] because it was 'full of tough guys'" is "insufficient to demonstrate a hostile work environment"); *Baker v. Donahoe*, 2012 WL 4460656, at *5 (E.D. Ky. Sept. 26, 2012) (granting motion to dismiss on hostile work environment claim where only allegation of severe and pervasive conduct is a telephone call where plaintiff's manager called her a "f-ing idiot"); *Fisher v. Fuyao Glass Am., Inc.*, 2020 WL 59632, at *3 (S.D. Ohio Jan. 6, 2020) (granting motion to dismiss on sexual harassment claim where allegations are based solely "on one occasion" where plaintiff "approached his supervisor . . . to complain about not being paid the same wages as

forklift operators, [and] she showed him a picture of her vagina"). Here, the single incident Plaintiff alleges as the sole basis for his harassment claim—a brief meeting with Vens—is certainly not as extreme as rape or sexual assault. Standing alone, it is plainly insufficient to state a plausible claim for sexual harassment.

Second, even if that single brief meeting with Vens could rise to the level of "severe and pervasive," Plaintiff must still show that the harassment he experienced is connected to his protected status. *See, e.g.*, *Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd.*, 2017 WL 5490920, at *6 (W.D. Ky. Nov. 15, 2017) (dismissing hostile work environment claim where plaintiff alleged no facts to suggest alleged conduct was related to his protected status); *Hensley v. Holiday Inn Exp. & Suites*, 2014 WL 547060, at *3 (E.D. Ky. Feb. 10, 2014) ("Plaintiff must sufficiently allege . . . that *but for her gender* she would not have been harassed. None of Plaintiff's allegations, even if taken as true, show that she was subjected to harassment due to her gender." (citation omitted)).

At most, Plaintiff baldly alleges that Vens "harassed, intimidated, threatened, and otherwise caused Eagen substantial harm . . . related at least substantially to Eagen's status as a homosexual." This allegation is entirely conclusory, and there is no factual support in the Complaint to explain, or even infer, how Vens's actions relate to Plaintiff's sexual orientation. *See Amadasu v. Donovan*, 2006 WL 1401648, at *9 (S.D. Ohio May 18, 2006). To the contrary, the Complaint specifically states that Vens's actions had nothing to do with Plaintiff's sexual orientation at all. *See Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 556-57 (M.D. Tenn. 2022) (finding three alleged incidents of harassment "do not appear to have any connection to Plaintiff's race, and Plaintiff does not make any connection between them and her race" and thus are irrelevant to the hostile work environment analysis). Plaintiff alleges that Vens became angry because Plaintiff

10

criticized the work of Vens's department during an earlier work meeting, not because Plaintiff identified as homosexual. Compl. ¶¶ 13-14. Confirming that understanding: the Complaint does not allege that Vens ever referenced Plaintiff's sexual orientation or that Plaintiff experienced any other problems with Vens before or after the single brief meeting forming the basis for the Complaint. Likewise, when Plaintiff raised his concerns about the brief meeting within the Company, he did not tie it to his sexual orientation. Compl. ¶¶ 20-25. In short, his pleading falls well short of containing sufficient allegations showing that Vens harassed Plaintiff due to his sexual orientation.

Elsewhere in the Complaint, Plaintiff alleges that, over two months—between January and February 2025—Consolino, not Vens, asked Plaintiff to try on his blazer, commenting that he was "so lean" and that Plaintiff "always looks so good." Compl. ¶¶ 44-45.[5] But, these allegations, even if considered, do not save Plaintiff's claim. They are, at most and taken along with Vens's actions, a couple of arguably unprofessional comments over a short period, making them neither severe nor pervasive. *See, e.g.*, *Amini v. Rite Aid Corp.*, 819 F. App'x 344, 349 (6th Cir. 2020) ("A handful of harsh age-based comments hardly makes a work environment hostile under the law."); *Baker*, 2012 WL 4460656, at *5 (granting motion to dismiss on harassment claim where the "few incidents of offensive conduct do not amount to actionable harassment"); *Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 821 (M.D. Tenn. 2011) (granting summary judgment because seven

---

[5]    Plaintiff's allegation that in "April 2022 at the grand opening of Core's Lexington office, Consolino stripped down to his underwear to change clothes in Eagen's office with Eagen in the room" is almost three years before the other alleged incidents of discrimination. It is therefore too temporally attenuated to be considered. *See Roseman v. Int'l Union*, 2020 WL 7268587, at *7 (E.D. Mich. Apr. 21, 2020) (concluding "stray comment" made "well before the other incidents about which [plaintiff] complains" was insufficient to establish actionable harassment).

incidents over the course of five months was "plainly insufficient" to show severe or pervasive conduct); *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432-33 (6th Cir. 2014) (upholding summary judgment where supervisor making a noose out of a phone wire behind the plaintiff's seat, and another employee stating, "[a]re you fixing to hang someone?" was not sufficiently severe or pervasive to support hostile work environment claims); *Okojie*, 584 F. Supp. 3d at 561 (collecting cases in Sixth Circuit showing that "[t]wo relevant incidents in a period of six to eight months is not enough to constitute 'pervasive' conduct for purposes of a hostile work environment based on race"). For example, the Sixth Circuit found that comments made to a male employee three or four times per week, such as being called "sweet booty" and being told a co-worker "wanted to mix coffee with his cream" were "not so severe and pervasive that a reasonable person would find his work environment hostile and abusive." *Rayford v. Ill. Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012). If those comments did not suffice, then Vens's and Consolino's comments, which even in combination involve fewer instances and less severe conduct, surely do not either.

The final reason Plaintiff's harassment claim fails is because his Complaint fails to allege that the "harassment" he experienced had any impact on his employment. Although "a plaintiff need not prove a tangible decline in [his] work productivity" to sustain a harassment claim, there must be some allegation that the harassment made it more difficult to do the job. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009); *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 785 (6th Cir. 2024) (affirming grant of motion to dismiss where plaintiff did not "claim any of these actions made it difficult for him to do his job or explain how those actions created an atmosphere of age-based harassment that pervaded the workplace"). On this point, Plaintiff alleges "[t]he Core workplace discriminatory intimidation, ridicule, and insult is sufficiently severe and pervasive to alter the conditions of Eagen's and others' employment and

created an abusive working environment." Compl. ¶ 58. The problem with this allegation is that it "simply regurgitates the relevant portion of the hostile work environment standard and makes no attempt to plead any facts indicating how Plaintiff's work performance was affected." *Dunbar v. Evolent Health, Inc.*, 2023 WL 2336911, at *9 (W.D. Ky. Mar. 2, 2023); *see also Keys*, 2013 WL 5740109, at *5 (dismissing hostile work environment claim because plaintiff "never alleges that the hostility or harassment she experienced affected her ability to perform her job").

While Plaintiff's Complaint alleges elsewhere that Larson "suggested" he "take a paid six week sabbatical," Compl. ¶ 29, and that Consolino held meetings about Plaintiff's department outside his presence, *id.* ¶ 31, neither of these allegations show that Plaintiff's job or his performance was, in fact, affected in any way. *See Keys*, 2013 WL 5740109, at *5. Indeed, Plaintiff's Complaint concedes that he was never required to take a six-week sabbatical. It was only "suggested" to him. This mere suggestion could not have affected his employment or work performance. Compl. ¶ 29. Plaintiff's vague frustration with Consolino holding meetings is no different. *See Johnson v. City of Flint*, 2010 WL 1957208, at *5 (E.D. Mich. May 13, 2010) (concluding no hostile work environment where plaintiff failed to show "that any of the alleged objectionable conduct interfered with her work performance"). Indeed, even post-*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), "feelings alone can't provide the requisite harm to support an adverse employment action." *Cordova v. Textron Aviation, Inc.*, 2025 WL 1262487, at *9 (D. Kan. Apr. 30, 2025); *see also Satina v. City of New York*, 2025 WL 902893, at *5 (S.D.N.Y. Mar. 25, 2025) (concluding same). Without any alleged impact on his job, Plaintiff's Complaint does not state a plausible harassment claim. *See Dunbar*, 2023 WL 2336911, at *9.

### III. PLAINTIFF'S RETALIATION CLAIM (COUNT II) SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE HE ENGAGED IN PROTECTED ACTIVITY OR SUFFERED AN ADVERSE EMPLOYMENT ACTION.

To state a claim of retaliation under the KCRA,[6] a plaintiff "must show that 1) [he] engaged in a protected activity, 2) [he] was disadvantaged by an act of [his] employer; and 3) there was a causal connection between the activity engaged in and the employer's act." *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. App. 1991). Plaintiff's claim fails all three prongs.

First, Plaintiff's Complaint does not specify the protected activity in which he engaged. Under the KCRA, protected activities include "oppos[ing] a practice declared unlawful by this chapter, or . . . mak[ing] a charge, complaint, testif[ying], assist[ing], or participat[ing] in any manner in any investigation, proceeding, or hearing under this chapter." Ky. Rev. Stat. § 344.280(1). The Sixth Circuit has similarly recognized protected activity includes "complaining to anyone . . . about allegedly unlawful practices . . . ." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (citation omitted). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). While a plaintiff's allegations of protected activity need not "be lodged with absolute formality, clarity, or precision," a plaintiff must allege more than a "vague charge of discrimination." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (citation omitted).

---

[6]    As explained if fn. 3, *supra* p. 8, to the extent Plaintiff attempts to cast his retaliation claim as arising under Title VII, the Title VII claim should be dismissed for failure to exhaust the EEOC's administrative remedies and because the same conclusion must be reached under either federal or state law.

First, at most, Plaintiff alleges that he "made . . . complaints . . . about the wrongful conduct of Vens" and "rather than address and remediate that conduct, Core has retaliated against Eagen." Compl. ¶ 63. But, as explained earlier, there is no allegation that Plaintiff referenced his own sexual orientation at all when raising a concern about Vens's supposed conduct—which would be necessary to establish that he was engaged in protected activity. In fact, Plaintiff's own allegations show that he did not report Vens's conduct because he believed it was connected to his sexual orientation. Rather, Plaintiff's own allegations show that he reported Vens to "defend[] the performance of his department" and because "he felt Vens would retaliate against Eagen's department in future accounting evaluations." *Id.* ¶ 21. None of those issues relate to any unlawful practice under the KCRA. Nor does Plaintiff allege that he connected his concerns about the way Vens treated him to his own sexual orientation. As result, "there is nothing in the Complaint to suggest that Plaintiff 'opposed a practice declared unlawful' by the KCRA as required to state a claim." *Bland v. E.J. Willman & Sons*, 2025 WL 1262058, at *7 (W.D. Ky. Apr. 30, 2025) (citation omitted); *id.* at *7-8 (granting motion to dismiss when plaintiff does not engage in protected activity); *Stanley v. Haier US Appliance Sols., Inc.*, 2020 WL 718232, at *2 (W.D. Ky. Feb. 12, 2020) (same).

In *Fox v. Eagle Distributing Co.*, 510 F.3d 587, 591 (6th Cir. 2007), the Sixth Circuit concluded that the plaintiff had not engaged in protected activity under the Age Discrimination in Employment Act because the plaintiff's statements to management were too vague to "amount to opposition to an unlawful employment practice." *Id.* The plaintiff told his manager that he intended to sue the company because "upper management [was] out to get him" and that the management had "prevented [him] from becoming a pre-sell rep." *Id.* at 592. At no time, however, did he mention that he believed he was discriminated against, and so the Sixth Circuit concluded that

15

these inexact statements were not sufficient to alert the employer that the plaintiff was opposing an unlawful employment practice to be engaged in protected activity. *Id.* Although *Fox* was decided at summary judgment, Plaintiff's allegations suffer from these same deficiencies. Just as in *Fox*, the allegations do not show any relationship to a protected status (here, sexual orientation) to suggest plaintiff was opposing any unlawful practice. Again, the very allegations of the Complaint belie any assertion of "protected activity."

Second, Plaintiff does not allege any materially adverse employment action to sustain his retaliation claim. An adverse employment action is "a materially adverse change in the terms and conditions of . . . employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (citation omitted).[7] "Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Spees*, 617 F.3d at 391 (citation omitted). Here, Plaintiff's allegations that he was offered—but not required to take—a six-week paid leave or that the CEO of the Company held "meetings about Eagen's department outside his presence" do not fit this bill. Compl. ¶ 63. Indeed, a "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (citation omitted) (en banc), *aff'd*, 548 U.S. 53 (2006). At most, Plaintiff's Complaint

---

[7]    The Supreme Court's recent decision in *Muldrow v. City of St. Louis* did not affect the standard for an adverse employment action under anti-retaliation claims. 601 U.S. 346, 354-55 (2024) (distinguishing adverse employment action standard for antidiscrimination claim from anti retaliation claim, explaining "*White* adopted [the higher] standard for reasons peculiar to the retaliation context").

may suggest some increased scrutiny,[8] but even increased scrutiny is "not tantamount to adverse employment actions." *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 169 (6th Cir. 2004) (affirming grant of summary judgment on retaliation claim).

Without allegations to support the protected activity or material harm prongs of a retaliation claim, there obviously can be no allegations to support the necessary causal nexus. For all of these reasons, the Court should grant Defendant's motion to dismiss the retaliation claim as well.

## IV. PLAINTIFF'S CLAIM FOR "WRONGFUL EMPLOYMENT PRACTICES" (COUNT III) SHOULD BE DISMISSED BECAUSE THE EMPLOYEE HANDBOOK CONTAINS A CLEAR DISCLAIMER.

Plaintiff vaguely asserts a claim for "wrongful employment practice," alleging that Defendant Core violated its Employee Handbook's Anti-Harassment Policy and Procedure by failing to respond to his complaints.[9] Compl. ¶¶ 66-67. While the precise legal basis for Plaintiff's claim is unclear from the face of the Complaint, employee-handbook-violation claims are generally construed as breach of contract claims. *See Anderson v. Speedway Superamerica, LLC*, 2007 WL 710164, at *3 (E.D. Ky. Mar. 6, 2007). Because the employee handbook is directly referenced in Plaintiff's Complaint, it is deemed incorporated into the Complaint and may be considered for the purposes of this motion to dismiss without converting it into a motion for summary judgment. *See Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 420 n.1 (6th Cir. 2020). Under Kentucky law, a clear disclaimer in the employee handbook defeats a breach

---

[8]    For argument's sake, even if this could suffice as an adverse employment action *and* Eagen's report of Vens was protected activity, Plaintiff's Complaint still never explains how the two are causally connected to plausibly allege the third element to state a claim for retaliation.

[9]    Plaintiff vaguely alleges that Core's failure to heed to Plaintiff's complaints "are in violation of the law." Compl. ¶ 67. But Kentucky does not recognize a broad "wrongful employment practices" cause of action, and Plaintiff does not explain what "law" was otherwise violated.

of contract claim. *See Anderson*, 2007 WL 710164, at *3. In *Anderson*, the court found sufficient a disclaimer in the policy manual that stated it "only informational" and cannot be "construed as creating or constituting a contract of employment (express or implied) between the Company and any employee." *Id.* at *3 n.7.

Like the handbook in *Anderson*, the Employee Handbook here (attached as Exhibit A to Defendant's Motion to Dismiss) expressly states at the bottom of every page:

> This document is for informational purposes only and is not to be construed as an employment agreement or contract.

Exh. A. Just as in *Anderson*, the "explicit disclaimer is fatal to [Plaintiff's] breach of contract claim." *Anderson*, 2007 WL 710164, at *3.

## V.  PLAINTIFF'S "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM" (COUNT IV) SHOULD BE DISMISSED BECAUSE IT IS PREEMPTED BY THE STATE DISCRIMINATION CLAIM.

Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") largely reprises his earlier "Sexual Harassment and Discrimination" claim. No different from that claim, the IIED claim is premised on Vens's "conduct toward Eagen on February 13, 2025." Compl. ¶ 70. Plaintiff reiterates that Vens's conduct "was outrageous and intolerable in that it offends against generally accepted standards of decency and morality" and caused him "to suffer severe emotional distress." *Id.*

However, as a pure legal matter, "Kentucky courts have consistently held that where a plaintiff pursues relief under the Kentucky Civil Rights Act, a claim of IIED based on the same employer conduct is barred." *Bogle v. Luvata Franklin, Inc.*, 2013 WL 1310753, at *2 (W.D. Ky. 2013); *see also Boggs v. Appalachian Reg'l Healthcare, Inc.*, 2021 WL 5413801, at *5 (E.D. Ky. July 16, 2021) (granting motion to dismiss on IIED claim subsumed by KRCA claim); *Wilson v.*

*Lowe's Home Ctr.*, 75 S.W.3d 229, 239 (Ky. Ct. App. 2001) (holding that a plaintiff's "IIED claim against [his employer] was subsumed by his KRS Chapter 344 claims"). Because the conduct Plaintiff alleges as to his IIED claim is "the same employer conduct" that underpins his KCRA claim, his IIED claim is preempted and subsumed by his statutory theory. *Bogle*, 2013 WL 1310753, at *2. This principle holds true even where the IIED claim is asserted in the alternative to the KCRA claim. In *Gray v. Wal-Mart Stores, Inc.*, the court granted the defendant's motion to dismiss under Federal Rule 12(b)(6) as to both the KCRA claim and the IIED claim, explaining "the KCRA claim does subsume the IIED claim regardless of whether the plaintiff inserted the phrase 'in the alternative' in his or her complaint." 2012 WL 4212926, at *4 (W.D. Ky. Sept. 18, 2012)

Even if not subsumed, the Complaint still fails to allege a plausible IIED claim. The Kentucky Supreme Court adopted the Restatement (Second) of Torts definition of IIED, which states "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (quoting Restatement (Second) of Torts § 46)). To state a claim, a plaintiff must allege: (1) the wrongdoer's conduct was intentional or reckless; the conduct must be outrageous and intolerable in that it offends the generally accepted standards of decency and morality; a causal connection; and the distress suffered must be severe. *See Osborn v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000). Here, Plaintiff's Complaint fails to allege sufficiently outrageous conduct or that he suffered severe emotional distress.

Conduct is actionable pursuant to an IIED claim only if it is "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Morgan v. Bird*,

289 S.W.3d 222, 228 (Ky. App. 2009). This standard is high. Kentucky courts, for example, declined to find that a nurse who told a patient who had just delivered a stillborn baby to "shut up" or a defendant who erected a billboard in his yard declaring that his neighbor was a child molester acted outrageously, intolerably or "beyond all decency." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3-4 (Ky. 1990). The Kentucky Supreme Court "stress[ed] that 'major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.'" *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791-92 (Ky. 2004). Apart from a threadbare recitation of the element, Plaintiff's Complaint offers no factual allegations on this point. In addition, "[b]eing demoted, criticized for work performance, passed over for promotion, and terminated" - which are not even alleged here - "pales in comparison to . . . [the] instances where Kentucky courts have found recovery appropriate." *Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819, 827 (E.D. Ky. 2013); *id.* at 828 (granting motion to dismiss on IIED claim related to alleged discrimination). Plaintiff's Complaint falls well short of the high bar to state plausibly outrageous conduct.

Nor does Plaintiff's Complaint plausibly allege severe emotional distress. "[T]o meet the standard of severe emotional distress the injured party must suffer distress that is 'substantially more than mere sorrow.'" *Benningfield v. Pettit Env'l, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005). No different from the deficiencies in *Bargo*, Plaintiff has "not offered a single factual allegation about the distress he suffered. Rather, he only alleges that he suffered 'extreme emotional distress and substantial damage.'" *Bargo*, 969 F. Supp. 2d at 828 (cleaned up). "This," the court explained, "is nothing but a conclusion and recitation of the elements of the cause of action, and fails to demonstrate a claim that is plausible on its face." *Id.* The same goes here, warranting dismissal of this IIED claim.

## VI. PLAINTIFF'S "NEGLIGENT RETENTION" CLAIM (COUNT V) SHOULD BE DISMISSED BECAUSE KENTUCKY DOES NOT RECOGNIZE A NEGLIGENT HIRING OR RETENTION CLAIM BROUGHT BY EMPLOYEES.

Plaintiff's final claim is negligent retention. Core, he alleges, had a common-law duty to protect employees from Vens, and it breached that duty by not firing him after Plaintiff reported him. Compl. ¶¶ 73-78. The Court should dismiss this claim because it runs headlong into settled Kentucky law.

In *Henn v. Pinnacle Publishing, LLC*, this Court granted a motion to dismiss on a negligent hiring/retention claim brought by an employee against his own employer, explaining that Kentucky recognizes the tort only in suits by third parties injured by an employer's worker. 2012 WL 6096670, at *3 (E.D. Ky. Dec. 7, 2012) (citing *Stalbosky v. Belew*, 205 F.3d 890 (6th Cir. 2000); *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)). *Henn* found "no Kentucky cases which allow an employee to sue his own employer under a negligence theory for an alleged hostile work environment created by a coworker or supervisor." 2012 WL 6096670, at *3. Since *Henn*, courts have routinely followed its lead, disposing identical claims on the same grounds. *See, e.g.*, *Roundtree v. AVI Foodsystems, Inc.*, 2023 WL 5255705, at *12 (E.D. Ky. Aug. 15, 2023) ("Kentucky law does not permit employees to sue their current or former employers for negligent hiring, retention, or supervision."); *Grubbs v. Thermo Fisher Sci.*, 2014 WL 1653761, at *2 (E.D. Ky. Apr. 23, 2014) ("Plaintiff's claim still suffers a fatal flaw: an employee cannot sue her employer for negligent supervision or retention."); *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 692 (W.D. Ky. 2014) ("It appears that this tort has only been applied in cases in which a third party sues an employer whose employee committed a tort."). This Court should likewise dismiss Plaintiff's negligent retention claim.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion to dismiss in its entirety.

Respectfully submitted,

FROST BROWN TODD LLP

 /s/ *Mekesha H. Montgomery*
Mekesha H. Montgomery (KBA #88004)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
615-251-5550 Telephone
615-251-5551 Facsimile
mmontgomery@fbtlaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's eFiling system, which will automatically send a Notice of Electronic Filing to all registered users, and I also served a copy of the foregoing document by electronic mail to:

Richard A. Getty
C. Thomas Ezzell
THE GETTY LAW GROUP, PLLC
The Offices at City Center
100 West Main Street, Suite 200
Lexington, Kentucky 40507
rgetty@gettylawgroup.com
tezzell@gettylawgroup.com

*Attorneys for Plaintiff*

 /s/ *Mekesha H. Montgomery*
*Counsel for Defendants*

0155812.0780219  4902-3437-6803

23