| | |
|---|---|
| KEVIN M. EAGEN II, <br><br><br> Plaintiff, <br><br> v. <br><br> CORE SPECIALTY INSURANCE HOLDINGS, INC.; CORE SPECIALTY INSURANCE SERVICES, INC.; WILLIAM VENS; JOSEPH E. CONSOLINO; and DON LARSON, <br><br><br> Defendants. | Case No. 5:25-cv-300-DCR <br><br> Judge Danny C. Reeves |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

Defendants Core Specialty Insurance Holdings, Inc. and Core Specialty Insurance Services, Inc. (collectively, "Core" or the "Company") along with William Vens ("Vens"), Joseph E. Consolino ("Consolino") and Don Larson ("Larson") submit this reply brief in further support of its motion to dismiss the Complaint filed by Plaintiff Kevin M. Eagen II ("Eagen") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff's mental gymnastics do not save his legally deficient claims. If anything, his strained, new legal theories and arguments confirm that he alleges nothing more than a simple workplace disagreement, and not unlawful disparate treatment, harassment, retaliation, or some other workplace tort. Plaintiff does not – because he cannot – allege any actionable misconduct.[1] He asserts, at most, only a few awkward exchanges and a disagreement with the way in which management investigated his concerns. Plaintiff may claim to be unhappy, but the Kentucky Civil Rights Act ("KCRA") does not render every workplace disagreement – including this one – unlawful and certainly does not give rise to liability from mere unhappiness.

In his response to Defendants' motion, Plaintiff contorts his allegations well beyond what he pleaded. He argues that being "excluded from meetings" and "monitored" constitute adverse employment actions because of his sexuality under a new disparate treatment (as opposed to harassment) theory, a construct not reflected in his Complaint. Plaintiff's Response Brief ("Resp."), Dkt. 9, PageID 142. In any event, those allegations do not, as a matter of law, constitute adverse employment actions even assuming the *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), standard applies to the KCRA. The KCRA – like Title VII – demands a tangible change to the terms or

---

[1]    As with Defendants' opening brief, Defendants deny all allegations of wrongdoing and accept the allegations as true only for the purpose of this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

conditions of employment, not just irritation or oversight. Plaintiff's own pleading concedes that he falls short of this standard: he remains in the same role performing the same work and does not allege any reduction in pay or benefits or any change his title, role, authority, or hours at work. Complaint ("Compl."), Dkt. 1-1, ¶¶ 10-11.

Plaintiff offers little meaningful rejoinder to the rest of his claims. In the face of overwhelming legal authority to the contrary, he nevertheless insists that his alleged interactions with Vens and Consolino created a "severe or pervasive" hostile work environment. As his own Complaint makes clear, the single interaction with Vens, as he alleges it, arose from a disagreement about performance, not unlawful bias, and the few alleged remarks by Consolino are far too infrequent, scattered, and mild to meet the pleading standard. Courts consistently dismiss claims based on significantly more egregious allegations than the totality of Plaintiffs' assertions here. Throughout his response, Plaintiff cites no contrary authority to suggest otherwise.

Plaintiff's retaliation claim likewise remains beyond repair. By his own account, he complained that Vens might retaliate against his department in future evaluations because he complained about the alleged interaction — not that Vens acted from a discriminatory motive or that Vens actually retaliated at all. Plaintiff's alleged concern about future retaliation from a now former employee is not protected activity under the KCRA.

That leaves his two deficient common law claims.[2] Plaintiff now rests his "wrongful employment practice" claim on the Company's Anti-Harassment Policy, which Plaintiff calls a stand-alone document. But the Handbook expressly incorporates that policy, bringing it within its disclaimer. And, even if relevant, nothing in the policy requires Core to take Plaintiff's preferred

---

[2] Plaintiff concedes his "negligent retention" claim (Count V), and thus, the Court should dismiss that claim. Resp., PageID 128.

disciplinary measures in response to any reports. Finally, as to the intentional infliction of emotional distress claim, Plaintiff limits the claims to Defendant Vens alone, describing him as "threatening" and making him "afraid." Resp., PageID 148. But again, taken as true, this alleged conduct does not meet Kentucky's demanding standard.

In short, *Iqbal* and *Twombly* require factual allegations that make a claim plausible, not possible. Labels, conclusions, and speculation do not suffice. Plaintiff's Complaint offers no allegations from which to infer unlawful discrimination, retaliation or to sustain his other state law claims based on the same conduct. Moreover, his response offers no reason to believe he can amend to state viable claims. The Court should dismiss the Complaint in full.

## ARGUMENT[3]

### I. PLAINTIFF HAS NOT SHOWN HIS COMPLAINT PLAUSIBLY STATES A DISPARATE TREATMENT OR HOSTILE WORK ENVIRONMENT CLAIM.

#### A. Disparate Treatment Claim

Plaintiff quite obviously tried to plead his discrimination claims under a hostile work environment theory only. *See* Compl., ¶¶ 55-61. But after the deficiencies in this harassment claim theory were identified by Defendants, Plaintiff tries to recast this discrimination claim as falling

---

[3] Defendants will not rehash the pleading standard but do note that Plaintiff cites the wrong standard. Plaintiff writes, in his response that to survive a motion to dismiss, the Court must "determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegation that would entitle them to relief." Resp., PageID 139 (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). That pleading standard, however, was **overturned** by *Iqbal* and *Twombly*. In *Bell Atl. Corp. v. Twombly*, the Supreme Court explicitly said the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face'" meaning a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Smith v. CSX Transport., Inc.*, 2016 WL 11609089, at *1 (E.D. Ky. Sept. 22, 2016) (quoting *Twombly*, 550 U.S. at 556).

under the disparate treatment framework.[4] Resp., PageID 141-42. Even if the Court considers the allegations under a disparate treatment rubric, the claim still fails.

Focusing on the *McDonnell-Douglas* framework, Plaintiff contends he sufficiently alleged an adverse employment action, motivated by his sexual orientation, because he "was subsequently excluded from meetings of his own department and his coworkers were told to 'monitor' Eagen's work." Resp., PageID 142.[5] As an initial matter, it is worth focusing on the word: "subsequently." Plaintiff obviously ties these allegations to his retaliation claim – not to his sexual orientation discrimination claim. In short, his own pleading belies his new theory.

In addition, Plaintiff must "show some harm respecting an identifiable term and condition of employment." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024). Allegations of exclusion and monitoring do not suffice to allege a plausible adverse employment action as a matter of law. The Eastern District of New York's recent decision in *Slater v. NYU Langone Health System* addressed the same types of allegations. 2025 WL 2208292, at *7 (E.D.N.Y. Aug. 4, 2025). In *Slater*, the court dismissed a complaint alleging that changes in job duties and increased monitoring amounted to adverse employment actions because the plaintiff never tied those

---

[4] To the extent he now seeks to amend his complaint to add a disparate-treatment claim in his response brief, he cannot do so. *See Harris v. Such*, 2023 WL 3807031, at *4 (M.D. Tenn. June 2, 2023) (holding a plaintiff "may not amend his pleadings by adding . . . claims as part of a response in opposition to a motion to dismiss")*; Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 698 (6th Cir. 2018) (explaining courts cannot consider "vague, outside-the-pleadings allegations" that imply novel factual allegations not stated in the complaint). Thus, the Court should decline to consider it here.

[5] To the extent Plaintiff suggests that "three clearly harassing and inappropriate incidents based on Eagen's sexuality" or the single brief meeting with Vens constitute adverse employment actions, Resp., PageID142, courts have concluded that "[b]eing subjected to insulting language or unfair criticism in the presence of other employees does not constitute an adverse employment action without further indication of a material impact on the terms and conditions of employment." *Mcloughlin v. Village of Southampton*, 2024 WL 4189224, at *4 (E.D.N.Y. Sept. 13, 2024) (quoting *Richards v. Dep't of Educ. Of City of N.Y.*, 2022 WL 329226, at *9 (S.D.N.Y. Feb. 2, 2022)). For these reasons, and as explained more fully with respect to the hostile work environment claim, these allegations also do not suffice to plausibly allege an adverse employment action.

allegations to any concrete harm. The court explained that removing responsibilities — without any showing that the change affected pay, benefits, or a meaningful term of employment — is not enough to show the necessary harm. Likewise, vague allegations of closer supervision, "without more," do not plausibly allege an adverse action. *Id.*; *see also John v. Brooklyn Eye Center*, 2025 WL 317515, at \*5 (E.D.N.Y. Jan. 28, 2025) ("That [defendant] requested [plaintiff's] work be collected for inspection is not an adverse action because 'alleged close monitoring or observation by an employer is not an adverse action.'").

Plaintiff's Complaint suffers from the same flaws. For both alleged adverse actions, he never explains—because he cannot—how either affected any term or condition of his employment. He cites no authority suggesting that allegations like these have ever been enough to state an adverse employment action.

To be clear, to sustain his claim, Plaintiff *must* allege "*some* harm." *See Muldrow*, 601 U.S. at 350 (emphasis added) ("[A]n employee must show some harm . . . to prevail in a Title VII case, . . ..."). The harm must be more than a "trifling" inconvenience. *Id*. at 360 (Thomas, J., concurring). Applying this standard, in *Bonaffini v. City University of New York*, 751 F. Supp. 3d 67, 75 (E.D.N.Y. 2024), the court recognized:

> [N]ot every change in working conditions, by itself, can be an adverse employment action. If it could, then we might as well drop the adverse employment action factor from the prima facie test, because every plaintiff who brings a discrimination case believes that he is worse off as a result of something that happened to him at work.

Similarly, in *Fayette Cnty Bd. Of Ed. v. Mitchell*, 2025 WL 1717110, at \*12 (Ky. Ct. App. June 20, 2025), the Kentucky Court of Appeals explained that "a mere inconvenience or an alteration of job responsibilities" is not an adverse employment action under the KCRA. Here, Plaintiff does not meet his burden to allege "some harm." On the contrary, he acknowledges, as he must, that ***he***

***remains employed at Core***. Compl., ¶¶ 10-11. Likewise, he points to no loss of compensation, benefits, or any other tangible injury stemming from those allegations. Under those circumstances, as recognized in *Slater* and other cases, allegations that Plaintiff was left out of meetings or was monitored, without more, do not constitute adverse employment actions. Thus, Plaintiff's disparate treatment theory and Count I should be dismissed.[6]

### B. Hostile Work Environment Claim

Plaintiff's effort to describe a single alleged interaction with Vens as constituting multiple incidents is contrary to the robust case law in this area but revealing of the underlying dilemma Plaintiff faces (*i.e.*, his deficient claim). Indeed, it is well established that this type of alleged interaction, even if considered along with his few allegations about Consolino, does not create a "severe or pervasive" hostile work environment. Plaintiff does not cite a single case to the contrary.

In his response, Plaintiff did not meaningfully address the threshold argument advanced in Defendants' opening brief; namely, even as alleged by Plaintiff, the alleged Vens interaction bore no connection to Plaintiff's protected status. As a result, this alleged interaction is entirely ***irrelevant*** to assessing Plaintiff's hostile work environment claim. *Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 556 (M.D. Tenn. Feb. 8, 2022) (disregarding incidents that were not connected to plaintiff's race); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) ("[O]nly harassment based on the plaintiff's [protected status] may be considered."). Elsewhere in his response, Plaintiff states that he "reasonably believed that the threatening nature of Vens' words

---

[6]    Plaintiff also takes issue with Core's "suggestion" that he take a "paid leave." Resp., PageID 143. But as Plaintiff's Complaint makes clear, that was only offered to him, and Plaintiff ultimately chose not to take the leave. Compl., Dkt. 1-2, ¶ 29.

and actions were motivated at least in part by the fact that Eagen is gay." Resp., PageID 142. But

he makes no factual allegations in the Complaint to support his belief.

And, more problematically for Plaintiff, a "belief" is not enough to state a claim. A plaintiff

must allege facts to show that the harassment was "based on" his protected status, meaning the

harassment "would not have occurred but for the plaintiff's [protected status]." *Okojie*, 584 F. Supp.

3d at 556 (quoting *Williams*, 643 F.3d at 511); *see also Louisville/Jefferson Cnty. Metro Gov't v.*

*Hume*, 2021 WL 1704353, at \*4 (Ky. Ct. App. Apr. 30, 2021) (explaining conduct can be properly

considered in hostile work environment analysis under the KCRA "where it can be shown that but

for the employee's sex, he would not have been the object of the harassment"); *Hord v. Quebecor*

*World, Inc.*, 2007 WL 290199, at \*5 (Ky. Ct. App. 2007) (concluding no sexual harassment claim

where "there is simply no evidence that [supervisor's] conduct, even if true, was based upon

gender"). Plaintiff concedes his sexual orientation was not the but-for cause of the alleged

interaction. But, his attempt to tie the interaction to his sexual orientation is no more than "sheer

speculation." *Okojie*, 584 F. Supp. 3d at 556. Indeed, nothing Vens is alleged to have said or done

referenced Plaintiff's sexual orientation, and Plaintiff readily acknowledges that Vens' alleged

conduct was motivated by Plaintiff's public criticism of Vens's work. Compl. ¶¶ 13-14; Resp.,

PageID 130.

Even if the alleged interaction with Vens were relevant, it still would not be enough to

sufficiently allege severity or pervasiveness. Plaintiff insists that the interaction was "more than

one incident" because it involved a series of actions—which included Vens "clenching a fist" and

speaking in a "threatening tone." Resp., PageID 144–45. But he cites no authority for the notion

that each movement or remark within a single brief alleged encounter counts as a separate act of

harassment. None exists. Courts treat multiple acts within the same exchange as one incident—

and a single incident becomes actionable only in the most unusual and extreme cases. In *Ault v. Oberlin College*, for example, the Sixth Circuit held that a reasonable jury could find that the single incident of the plaintiff's manager "press[ing]" his penis against plaintiff, "position[ing] himself in a way that prevented her from moving to escape, and "fail[ing] to relent despite [her] repeated requests" "by itself . . . created a hostile work environment." 620 F. App'x 395, 403 (6th Cir. 2015). Critically, the Sixth Circuit did not count each action as separate actionable incidents. *See id.* Rather, it viewed the interaction as an example of "severe" conduct.

The alleged Vens interaction is at most a single incident that falls well short of actionable severity. *See, e.g.*, *Brown v. Columbia Sussex Corp.*, 2009 WL 1636362, at \*2 (Ky. Ct. App. June 12, 2009) (explaining that derogatory comments made by general manager who yelled at applicants while "possibly carr[ying] a firearm" were insufficient to rise to the level of harassment required by Title VII or the KCRA); *Batuyong v. Gates*, 337 F. App'x 451, 457 (6th Cir. 2009) (upholding dismissal where a supervisor repeatedly "raised his voice, became verbally abusive, and chastised [the plaintiff] in front of others"). Ordinary workplace friction—arguments, raised voices, even rudeness—does not amount to an actionable harassment claim under the KCRA. *See Rait v. Oshkosh Architectural Door Co.*, 2007 WL 702806, at \*8 (E.D. Wis. Mar. 2, 2007) (explaining "personality conflicts at work that generate antipathy and mere snubbing by co-workers and even supervisors are not actionable"). Plaintiff cites nothing that would suggest otherwise.

Turning to the allegations about Consolino, they too are insufficient to sustain Plaintiff's hostile work environment claim. He simply ignores the mountain of authority Defendants cite finding far more egregious conduct insufficient to support a claim as a matter of law. He only argues that it is enough that Consolino's purported conduct "occurred on several occasions, was

unwanted, and created an uncomfortable work environment for Eagen." Resp., PageID 144. Setting aside the conclusory nature of Plaintiff's analysis, no court has found that similar conduct alleged to be pervasive or severe enough to establish a hostile work environment.[7] In fact, as noted, courts have found far more frequent and egregious conduct insufficient. For example, as highlighted in Defendants' opening brief, the Sixth Circuit found comments made to a male employee *three or four times per week*, such as being called "sweet booty," and being told a co-worker "wanted to mix coffee with his cream" were "not so severe and pervasive that a reasonable person would find his work environment hostile and abusive." *Rayford v. Ill. Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012). Consolino's alleged conduct is comparatively far more benign and much less frequent than what occurred in *Rayford*, making it far short of constituting actionable harassment.

That bottom-line conclusion remains the same even if the Court were to consider the alleged interactions with Vens and Consolino in the aggregate. Except in severe circumstances where an incident involves sexual assault — which Plaintiff plainly does not allege here — no court has found that two or three isolated incidents over the course of many months is severe or pervasive enough to sustain a claim. *Okojie*, 584 F. Supp. 3d at 561 (collecting cases in Sixth Circuit showing that "[t]wo relevant incidents in a period of six to eight months is not enough to constitute 'pervasive' conduct for purposes of a hostile work environment based on race"); *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 120-21 (6th Cir. 2003) (concluding incident in

---

[7]    As explained in Defendants' opening brief, but ignored entirely by Plaintiff in his response, the alleged 2022 incident is simply too temporally attenuated to be relevant here, where the only other two alleged incidents involving Consolino happened in January and February 2025. *See Ammerman v. Bd. of Nicholas Cnty.*, 30 S.W.3d 793, 799 (Ky. 2000); *Roseman v. Int'l Union*, 2020 WL 7268587, at *7 (E.D. Mich. Apr. 21, 2020)

which supervisor grabbed plaintiff by the chest and pushed her into a file cabinet, combined with offensive remark several months before, is not severe or pervasive).

Perhaps recognizing these shortcomings, Plaintiff pivots to alleged acts of "misogyny." Resp., PageID 144. However, these allegations of anti-female bias, do not support Plaintiff's hostile work environment claim, which is premised on his sexual orientation. Even if they could be relevant at all, they are relevant only on the margins. *Cf. Strickland v. City of Detroit*, 995 F.3d 495, 507 (6th Cir. 2021) (granting summary judgment to defendants after concluding that incidents of colleagues' experiences, which were not experienced by plaintiff, would be considered as evidence of a hostile work environment, but given less weight); *Ruiez-Fane v. Tharp*, 545 F. Supp. 3d 543, 555 (N.D. Ohio June 25, 2021) ("[W]hile instances of harassment concerning other members of plaintiff's protected classes can be relevant to plaintiff's experience in a hostile work environment, they have diminished probative value."). But Plaintiff's claim is not premised on anti-female bias. And, even if the alleged allegations of anti-female bias could be relevant, his claim is not on the margins. As demonstrated above, his allegations as to the conduct *he* experienced do not come close to stating a claim for harassment. Accordingly, the allegations concerning other employees' experience, even if considered, cannot save his otherwise deficient claim.

As a final point, Plaintiff also never directly responds to Defendants' argument that any purported harassment did not have an impact on his employment. Resp., PageID 144-45. Instead, he oddly asserts that Core "recognized" the interference when it suggested he take paid leave rather than act against his coworkers. *Id.*, PageID145. That argument misses the mark. The question is not what Core may have offered, but whether the alleged conduct made it more difficult for Plaintiff to do his job. *See Milczak v. General Motors, LLC*, 102 F.4th 772, 785 (6th Cir. 2024) (explaining that a hostile work environment must have "the effect of unreasonably interfering with

[plaintiff's] work performance" to be actionable). Plaintiff never alleges that any conduct interfered with his work performance, and he never addresses this point in his response. Beyond restating the legal standard, he alleges no facts showing that his work performance suffered in any way, leaving yet another gap in his already deficient hostile work environment claim.

As such, the Court should dismiss the hostile work environment theory and Count I.

## II.     PLAINTIFF HAS NOT SHOWN HIS COMPLAINT PLAUSIBLY STATES A RETALIATION CLAIM.

Plaintiff's effort to save his retaliation claim does not fare any better. First, he argues that he sufficiently alleged that he engaged in protected activity by reporting that Vens berated him because of his sexuality. Resp., PageID 145-46. But the Complaint tells a different story. Nothing in it suggests that the alleged interaction with Vens had anything to do with Plaintiff's sexual orientation.[8] To the contrary, by Plaintiff's own account, the interaction stemmed from Plaintiff's public criticism of Vens's work. Compl. ¶¶ 13–14; Resp., PageID 130.

More problematic to his retaliation claim, however, is that Plaintiff does not allege that his report to Core put it on notice that the alleged interaction with Vens was connected to Plaintiff's sexuality or any other kind of unlawful discrimination. In response, Plaintiff asserts that "[t]he actual words used by Eagen . . . will likely be fleshed out during discovery" but he "has included in at least five allegations of his Complaint that the discrimination he suffered was based on his sexuality." Resp., PageID 146. For starters, Plaintiff should know what he himself said without discovery. Either way, Plaintiff still cannot rely on the prospect of discovery to save his complaint: "only a complaint that states a plausible claim for relief survives a motion to dismiss" and thus

---

[8]     Importantly, Plaintiff does not allege that he reported any of the alleged incidents concerning Consolino, and thus Plaintiff does not (and cannot) argue that these alleged incidents are relevant to his retaliation claim.

entitles him to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79. To be entitled to discovery, then, he must first allege specific facts from which the Court can infer that he made a proper report of the discrimination to Core. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008).

Here, the Complaint shows that his report to Core was, at best, a general workplace grievance. He says he reported Vens to "defend the performance of his department" and because he feared Vens might "retaliate against [the] department in future accounting evaluations." Compl. ¶ 21. That report may reflect tension between colleagues, but it does not suggest a good faith report of discrimination. The Sixth Circuit has made clear that such vague complaints are not protected activity. In *Booker v. Brown & Williamson Tobacco Co.*, for example, the court held that an internal memorandum disputing management decisions—and even suggesting that a supervisor "may be racist"—was too imprecise to qualify as protected activity. 879 F.2d 1304, 1313 (6th Cir. 1989). Otherwise, the court warned, every workplace disagreement could be recast as a discrimination charge simply by invoking the term. *Id.* The same is true here: nothing in Plaintiff's report gave Core any reason to think he was raising an issue of unlawful bias.

As to his allegations concerning any materially adverse employment action taken against him—the standard applicable to retaliation claims—Plaintiff, again, does not meaningfully respond to Defendants' arguments from their opening brief, and there is no need to restate them here. What matters is that the actions he describes do not meet the lower bar set in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), let alone the higher standard for retaliation claims under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). If his allegations cannot satisfy the lesser showing required for discrimination, they cannot possibly sustain a retaliation claim.

## III. PLAINTIFF HAS NOT SHOWN HIS COMPLAINT PLAUSIBLY STATES A "WRONGFUL EMPLOYMENT PRACTICE" CLAIM.

Plaintiff insists that his "wrongful employment practice" claim survives because Core's Anti-Harassment Policy is a "separate and distinct document" not incorporated into the Employee Handbook. Resp., PageID 147. But a document is incorporated when another explicitly references it, *University of Kentucky v. Regard*, 670 S.W.3d 903, 913 (Ky. 2023), and the Handbook here does exactly that—it directs employees to "review and follow the Anti-Harassment Policy" on the company intranet. Ex. A, PageID 191. That language brings the Policy within the Handbook's disclaimer. Even setting incorporation aside, the claim still does not survive. Plaintiff never alleges how Core breached the Policy or misapplied its Complaint Procedure, which grants the Company discretion to decide whether a violation occurred. Ex. B, PageID 203–04. For example, the policy sets out an internal investigation procedure that gives "the Chief Human Resources Officer, together with the General Counsel or designated member of executive management" discretion "to determine whether the alleged violation occurred." *Id.* at PageID 203. It also allows these individuals to determine the "appropriate disciplinary action." *Id.* In other words, it does not require the Company to discipline another employee to Plaintiff's liking. In addition, as already shown, the conduct he describes does not amount to discrimination or harassment under the law, so there is no violation of this policy. This claim therefore also fails.

## IV. PLAINTIFF HAS NOT SHOWN HIS COMPLAINT PLAUSIBLY STATES A "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS" CLAIM.

Plaintiff now tries to "clarify" that his intentional infliction of emotional distress claim applies only to Defendant Vens. Resp., PageID 147. But even on that narrower ground, the claim falls short because, as a matter of law, the alleged Vens interaction was not so "outrageous and intolerable" that it offended "the generally accepted standards of decency and morality." *Morgan*

*v. Bird*, 289 S.W.3d 222, 228 (Ky. Ct. App. 2009). At most, Plaintiff alleges that Vens acted "threatening[ly]" and made him afraid. Resp., PageID 148. Fear and insult, however, do not meet Kentucky's high threshold for "outrage." As the Kentucky Supreme Court has emphasized, "major outrage is essential to the tort," and mere awareness that one's conduct may offend or hurt another's feelings is not enough. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791-92 (Ky. 2004).

Plaintiff simply repeats that he felt "afraid" and "threatened," without offering anything more. Those kinds of bare assertions do not come close to what Kentucky law requires to state a claim. The tort applies only in extraordinary cases—when a plaintiff, for example, "broke down," suffered repeated panic attacks, developed serious health problems, and contemplated suicide. *Burgess v. Taylor*, 44 S.W.3d 806, 812 (Ky. Ct. App. 2001). Plaintiff alleges none of that here, and his claim falls well short of the line.

## V.     THE COURT SHOULD NOT PERMIT PLAINTIFF TO AMEND HIS COMPLAINT BECAUSE AMENDMENT IS FUTILE.

Buried in a footnote, Plaintiff asks for leave to amend "should there be any question" about the sufficiency of his Complaint. Resp., PageID 140. The Court should decline that invitation. An amendment is futile when it would not allow the complaint to survive a motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005). Plaintiff offers no hint of what new facts he could add to fix the many shortcomings already identified. He could have addressed these issues by filing an amended complaint in response to Defendants' motion to dismiss but chose not to.

That choice speaks for itself: there are no facts left to plead. Leave to amend should be denied, and the claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss in full and dismiss all claims with prejudice.

Respectfully submitted,

*s/ Mekesha H. Montgomery*
Mekesha H. Montgomery (KBA #88004)
FROST BROWN TODD LLP
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
Telephone: (615) 251-5500
Facsimile: (615) 251-5551
mmontgomery@fbtlaw.com

David E. Schwartz (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Manhattan West, 395 9th Ave
New York, NY 10001
Telephone: (212) 735-2473
Facsimile: (917) 777-2473
dschwartz@skadden.com

*Attorneys for Defendants Core Specialty Insurance Holdings, Inc.; Core Specialty Insurance Services, Inc.; William Vens; Joseph E. Consolino; and Don Larson*

0155812.0811448   4899-2995-5442